UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Case No. 23-CR-446-2 (BAH) |
| | : | |
| **TESHARIA DIGGS,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION FOR DEFEENDANT TESHARIA DIGGS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that defendant TESHARIA DIGGS be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(C) (Serious Drug Felony). The Government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**I.   Introduction and Procedural History**

Defendant TESHARIA DIGGS is charged by Superseding Indictment in Count 1 for conspiring to distribute phencyclidine (PCP) with co-defendant FRANCISCO ROCHE from in or around December 2023 to the present, in violation of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(B)(iv), and 841(b)(1)(C), and in Counts 14 and 15 for distributing PCP on two dates in January 2024, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. (ECF No. 15.) DIGGS was arrested at her residence in the District of Columbia on May 24, 2024, pursuant to the arrest warrant issued in this case. An Initial Appearance was held on May 28, 2024, at which a Detention Hearing was scheduled for May 29, 2024.

Importantly, pursuant to 18 U.S.C. § 3142(e)(3)(A), upon a probable cause finding by the Court that the defendant committed a predicate offense charged in Counts 1, 14, and/or 15, a rebuttable presumption exists that no condition or combination of conditions will reasonably assure DIGGS' appearance as required and the safety of the community.

## II.  Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the Government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

Section 3142(g) provides four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  18 U.S.C. § 3142(g). As set forth below, a review of these factors shows that DIGGS' should be detained pending trial in this case.

A. **Nature and Circumstances of the Offenses**

This case arises from an investigation by the Drug Enforcement Administration, Metropolitan Police Department, and law enforcement partners into narcotics trafficking in the Petworth neighborhood in the District of Columbia, where DIGGS resides.

During the course of the investigation, law enforcement learned that co-defendant ROCHE was distributing multiple controlled substances in and around Petworth. Beginning in August 2023, law enforcement utilized confidential informants ("CIs") to purchase numerous quantities of PCP, fentanyl, and cocaine base from ROCHE in the area. ROCHE has been indicted for five of those controlled purchases that occurred in October 2023 through December 2023. (*See* Superseding Indictment, Counts 2-8 and 11-13.) On December 19, 2023, ROCHE was initially indicted for the unlawful possession of a firearm and ammunition on December 7, 2023, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) ROCHE was arrested on December 22, 2023,[1] and subsequently ordered detained pending trial. (December 26, 2023, Minute Entry.) As a result, ROCHE has been detained in this case since his arrest December 22, 2023, and housed at D.C. Jail since that time.

In January 2024, law enforcement utilized CIs to purchase two quantities of PCP from DIGGS in Petworth on January 11, 2024, and January 23, 2024, charged in Counts 14 and 15, respectively. Both purchases occurred in the vicinity of the 600 block of Otis Place NW, which is

---

[1] Law enforcement also executed a search warrant (23-SW-448) for ROCHE's residence and vehicle upon his arrest. An Ocean Spray Cran-Apple juice bottle was found in ROCHE's vehicle that contained suspected liquid PCP, which also contained small flakes in the liquid resembling tobacco residue. In addition, law enforcement located a box of Newport cigarettes in ROCHE's vehicle, which is consistent with a method used to distribute PCP "dippers" to users, and a bag of liquid drippers inside of ROCHE's residence, which are a tool that may be used to transfer liquid PCP and mixing agents. *See United States v. Little*, 235 F. Supp. 3d 272, 278 n.3 (D.D.C. 2017) (J. Collyer) (describing how PCP is often sold by this method in the District of Columbia and "Newport cigarettes, which contain menthol, are favored for this purpose").

a residential area and across the street from the Bruce-Monroe Elementary School and Park View Recreation Center. The location is also in close proximity to DIGGS' confirmed and current residence on the 700 block of Otis Place NW. Significantly, the investigation further revealed that DIGGS was engaged in a conspiracy with ROCHE to distribute these and other quantities of PCP, as charged in Count 1.

        **1.**      **First Controlled Purchase from DIGGS:  January 11, 2024 (Count 14)**

On January 11, 2024, CIs met with SUBJECT-1, who has been identified as an associate of ROCHE and DIGGS. SUBJECT-1 subsequently provided a CI telephone number to DIGGS, after which DIGGS called a CI and stated, in sum and substance, that DIGGS was calling for ROCHE. The CI requested to purchase an ounce of PCP (commonly referred to by the co-defendants and other subjects as "water" during the course of this investigation). DIGGS confirmed that the CI was in the nearby area and then said that she needed about 20 minutes.

Shortly thereafter, the CI received a three-way call from ROCHE (then housed at D.C. Jail, using a D.C. inmate call line) and DIGGS (utilizing one of DIGGS' two telephone numbers). During the call, ROCHE identified himself and told the CI that the woman, subsequently identified as DIGGS, was going to take his place. ROCHE told the CI to travel to a specific location on the 600 block of Otis Place NW and to wait at that location. A sort time after, DIGGS approached the CI vehicle while holding a black plastic bag and then entered the vehicle. DIGGS proceeded to sell approximately one ounce of suspected liquid PCP to the CI in exchange for $300. DEA laboratory testing has confirmed the presence of PCP in the liquid mixture.



*Photograph of DIGGS During January 11, 2024 Controlled Purchase*



*Black Plastic Bag and Baby Bottle Containing PCP Sold by DIGGS*

2. **Second Controlled Purchase from DIGGS:  January 23, 2024 (Count 15)**

On January 23, 2024, law enforcement CIs conducted a second controlled purchase of PCP from DIGGS at the same meeting location on the 600 block of Otis Place NW. Law enforcement observed DIGGS arrive at the meeting location by walking from the 700 block of Otis Place NW, where her residence is located. DIGGS was again holding a black plastic bag. DIGGS entered the CI vehicle and proceeded to sell approximately eight ounces of suspected liquid PCP to the CI in

5

exchange for $1,600. A field test confirmed the presence of PCP in the liquid mixture, which weighed approximately 204.22 grams. Laboratory testing is pending.



*Photograph of DIGGS During January 23, 2024 Controlled Purchase*



*Black Plastic Bag and Baby Bottle Containing PCP Sold by DIGGS*

### 3. **ROCHE and DIGGS Conspire to Distribute PCP (Count 1)**

The investigation has revealed that beginning in at least December 2023, ROCHE and DIGGS conspired together to distribute PCP to customers and associates in Petworth, including

but not limited to the sales charged in Counts 14 and 15. Specifically, following ROCHE's arrest in this case on December 22, 2023, DIGGS communicated with ROCHE about distributing PCP together in dozens of recorded communications—including jail calls, text messages, and video visits. ROCHE utilized his own inmate account to communicate with DIGGS regarding PCP distribution, as well as the accounts for at least four other inmates, while DIGGS used two different telephone numbers.

During recorded communications beginning on December 28, 2023 (just two days after ROCHE was ordered detained pending trial in this case), ROCHE and DIGGS discussed DIGGS beginning to sell PCP for ROCHE to buyers while ROCHE was incarcerated. In sum and substance, these discussions included topics such as that PCP was stored at DIGGS' residence; how to mix, measure, and package PCP for distribution; obtaining PCP distribution supplies and packaging; obtaining additional quantities of PCP from suppliers; the transfer of PCP to buyers; PCP pricing; and how to receive payment for PCP sales.

These recorded communications included the aforementioned three-way call with DIGGS, ROCHE, and the CI on January 11, 2024, related to the controlled purchase of approximately one ounce of PCP from DIGGS. The communications also revealed that DIGGS, in conjunction with ROCHE, distributed PCP to at least two other subjects in or around January 2024. In addition, DIGGS discussed communicating with multiple known and unknown associates about locating customers and obtaining additional quantities of PCP and distribution supplies.

Consistent with that conduct, on May 24, 2024, law enforcement located a quantity of suspected PCP stored in a refrigerator in DIGGS' bedroom during the execution of a search warrant for her residence (24-SW-163).

 

*Photograph of Suspected PCP in DIGGS' Bedroom Refrigerator*

B.     **Weight of the Evidence**

The weight of the evidence against DIGGS in this case also strongly supports pretrial detention. As clarified by former-Chief Judge Howell, this factor is a "common-sense" consideration that, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023) (Howell, C.J.), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).

Altogether, the Government has strong evidence that DIGGS actively conspired to distribute multiple quantities of liquid PCP during the course of the conspiracy and specifically that DIGGS distributed seized quantities of PCP on two occasions. In January 2024, law enforcement conducted two controlled purchases of liquid PCP from DIGGS, first for approximately one ounce, then next for approximately eight ounces. DIGGS' communications

with the CIs were recorded during both deals. Law enforcement identified DIGGS as the subject conducting both sales through in-person observations, surveillance, and records regarding the telephone numbers used by DIGGS. In addition, the investigation has identified dozens of recorded communications between DIGGS and ROCHE since ROCHE has been housed at D.C. Jail, in which the co-defendants discuss numerous topics related to PCP distribution, including mixing, packaging, quantities, locations, sales, payments, customers, associates, and suppliers. As described above, law enforcement also located a quantity of suspected PCP stored in a refrigerator in DIGGS' bedroom upon her arrest.

Additionally, during a post-*Miranda* interview with law enforcement, DIGGS admitted to much of the charged conduct, including specifically to multiple sales of PCP in partnership with co-defendant ROCHE. Specifically, DIGGS stated that she was in a relationship with ROCHE and that ROCHE left a quantity of PCP at DIGGS' residence at some point before ROCHE was incarcerated in December 2023. DIGGS admitted to selling PCP for ROCHE two or three times and claimed that she did not sell PCP to anyone else. DIGGS further stated that she and ROCHE attempted to obtain additional quantities of PCP from other sources, but that those attempts were unsuccessful. DIGGS also stated that at one point in or around November 2023, ROCHE left a firearm at her home after staying overnight, and further that ROCHE contacted DIGGS the following day to notify DIGGS that SUBJECT-1 would be arriving at DIGGS' residence to pick up the firearm from DIGGS. DIGGS further stated that SUBJECT-1 arrived at her residence a short time later and that she provided the firearm to SUBJECT-1.

C. **The Defendant's History and Characteristics**

Although DIGGS does not have any criminal history and does have strong ties to the District of Columbia, the nature of her conduct in connection with the offenses reveals characteristics that further support pretrial detention in this case.

DIGGS has demonstrated a clear disregard for the rule of law, not only by engaging in a conspiracy to distribute large distribution-level quantities of PCP over multiple months, but further by conspiring to do so in conjunction with co-defendant ROCHE while he was detained at D.C. Jail. DIGGS directly engaged in and facilitated multiple sales of PCP with ROCHE to buyers while she knew that ROCHE was incarcerated. DIGGS also actively networked with associates and potential sources of supply in multiple attempts to obtain additional quantities of PCP and distribution supplies.

Additionally, the Pretrial Services Agency has confirmed that DIGGS is currently unemployed and resides at the same location on the 700 block of Otis Place NW where she was arrested on May 24, 2024, and where she lived and conducted her PCP distribution operation at all relevant times. DIGGS is believed to have resided with her mother and other family members, including adults and children, at the residence during the charged offenses. Therefore, on this record there is no basis to believe that DIGGS would cease such dangerous criminal activity upon conditional release in this case, especially to the same residence and/or family members with whom she lived during her offenses. Indeed, these ties were present prior to DIGGS' offenses and did not serve to deter those crimes or protect the community.

D. **Danger to the Community**

The nature and seriousness of the danger to any person or the community posed by DIGGS' release also supports pretrial detention. Based on indicted Counts 1, 14, and 15, there is a rebuttable

presumption that "no condition or combination of conditions will reasonably assure the appearance of [DIGGS] as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. § 3142(e)(3)(A). Under the Bail Reform Act, "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). Legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Id.* at 507; *see also United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203); *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) (recognizing that "threat of dealing drugs" represents a danger to community warranting pretrial detention).

Indeed, this District Court has specifically recognized that PCP is a dangerous illegal drug. *See United States v. Ware*, 2009 WL 939632, at *2 (D.D.C. Apr. 7, 2009) (J. Lamberth) (noting that PCP is "a drug that is a serious danger to the community" in finding that a defendant who conspired to sell PCP and who in fact did so was a danger to the community); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 72 (D.D.C. 2018) (J. Moss) (noting that PCP is "a particularly dangerous illegal drug"); *United States v. Gage*, 2018 WL 6201059, at *5 (D.D.C. Nov. 28, 2018) (J. Collyer) (citing *Ware* and *Taylor* for the proposition that PCP is particularly dangerous); *United States v. Scott*, 2019 WL 2526401, at *5 (D.D.C. June 19, 2019) (J. Collyer) (noting the same).

DIGGS' distribution, handling, and storage of this particularly dangerous drug demonstrates that her conditional release would pose a clear danger to the community. DIGGS conducted at least two PCP sales to law enforcement CIs in January 2024, both which occurred on the 600 block of Otis Place NW, during the day, in a residential neighborhood, one block from

DIGGS' residence, and across the street from an elementary school and recreation center. As shown above, on both occasions DIGGS sold the liquid PCP in baby bottles; in such form, this already dangerous drug could potentially be ingested by an unknowing child or infant with serious medical consequences.[2] The investigation also revealed that DIGGS stored PCP at her residence during the duration of the distribution conspiracy, where she lived with other adults and children, which is further supported by the suspected PCP found in DIGGS' bedroom refrigerator during the search warrant on May 24, 2024, located in close proximity to drinks and food.

## CONCLUSION

The Government respectfully requests that the Court grant its motion that defendant TESHARIA DIGGS be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:   */s/ Thomas G. Strong*
THOMAS G. STRONG
Assistant United States Attorney
United States Attorney's Office
601 D Street NW
Washington, DC 20530
Telephone:  202-252-7063
Email:  thomas.strong@usdoj.gov

---

[2]   *See generally* "Phencyclidine Intoxication and Adverse Effects: A Clinical and Pharmacological Review of an Illicit Drug," Cal. J. Emerg. Med. (Feb. 2007) (*available a*t https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2859735/pdf/cjem8_1p0009.pdf.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on May 29, 2024.

By:   */s/ Thomas G. Strong*
Thomas G. Strong
Assistant United States Attorney